440

**GEORGIA PEANUT CO. et al. v. FAMO PRODUCTS CO. et al.**

**DONALSONVILLE GRAIN ELEVATOR CO. v. SAME.**

No. 8694.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1938.

W. L. Bryan, of Atlanta, Ga., and Meserve, Mumper, Hughes & Robertson, of Los Angeles, Cal., for appellant.

J. E. Simpson, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Appellant, plaintiff below, appeals from a judgment against it in a jury waived proceeding. It sued upon an alleged contract for the sale of certain peanuts to the appellees-defendants' predecessor in interest. Appellant claimed that the contract was made through a broker by virtue of a memorandum of sale of the peanuts, signed by the broker, it was claimed, as representative of both parties.

The appellees, defendants below, were successor in interest to the claimed buyer. They contended that there was no meeting of minds on the contract and that the alleged broker was in fact merely the agent of the appellant seller, and hence its signature was not that of an agent of the buyer.

It is not necessary to resolve these disputes, since we regard it as controlling that the price of the peanuts was $18,450, and that there was no written authorization from the buyer to the broker.

For the purposes of this decision, we are accepting appellant's contention that the claimed broker was in fact the agent of both parties in signing the memorandum of sale, and that if it had been properly authorized the contract would have been valid.

California Civil Code, § 1624, subd. 4, as amended, St.1905, p. 611 provides:

"1624. *What contracts must be written.* The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: * * *

"(4) An agreement for the sale of goods, chattels, or things in action at a price not less than two hundred dollars, unless the buyer accepts or receives part of such goods and chattels or the evidences, or some of them, of such things in action, or pays at the time some part of the purchase money; but when a sale is made at auction, an entry by the auctioneer in his sale book, at the time of the sale, of the kind of property sold, the terms of the sale, the price, and the names of the purchaser·and person on whose account the sale is made, is a sufficient memorandum."

And section 2309 reads: "§ 2309. *Form of authority.* An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

Appellant contends that there is an exception in the California law of a brokerage transaction from the provision of Civil Code, § 2309, and that a broker occupies a status in which his authority to act as such may be proved by parol.

No California case is cited showing such an exception to what is clearly the plain provision of the Code section that the authority of any agent, including brokers, to execute an instrument required to be in writing shall be likewise created in a written instrument.

Appellant cites· a case by the North Dakota Supreme Court in which there is the dictum: "In our view of the matter, it is immaterial whether the contract be considered a North Dakota contract or an Illinois contract. In either event it ·was enforceable under the statute quoted. Quinlan was a broker. He acted as the intermediary between the plaintiffs and the defendant. * * * As a broker under the circumstances here disclosed he was primarily the agent of the defendant. * * * But there was no reason why he should not act as the agent for both the plaintiffs and the defendant, if both consented that he do so. * * * He acted as the negotiator between them. He conveyed the defendant's offer to the plaintiffs, and the plaintiffs' counter offer to the de-

fendant. * * * Had he signed the confirmation of sale sent to the defendant on September 17th, we have no doubt that he would have been acting within his authority and thereby would have met the requirements of the statute so as to render the contract enforceable as against the plaintiffs." Metzler v. Barnes Co., 58 N. D. 455, 226 N.W. 501, 504.

Since the court nowhere considers the North Dakota statute, which is practically identical with the California provision, requiring an agent's authority to make such a written contract to be in writing, we can find no more in the dictum than that it is describing the true broker's powers in the absence of such a statute.

Also are cited several Georgia cases, in which its corresponding statute of frauds is supplemented by a statute similar to California's. In the earlier cases considering the effect of the statute requiring the agent's authority to be in writing, it was held that neither in sales of real estate nor of personalty was it required. Brooke & Co. v. Cunningham Bros., 19 Ga.App. 21, 90 S.E. 1037, 1038; Brandon v. Pritchett, 126 Ga. 286, 55 S.E. 241, 7 Ann.Cas. 1093.

There has been no specific overruling by the Georgia Supreme Court of the decision with regard to sales of personalty, but there has been an acknowledged overruling with regard to the requirement of written authority for an agent to make sales of real estate. Byrd v. Piha, 165 Ga. 397, 141 S.E. 48, 50. The reasoning of this latter case as well applies to sales of personalty.

In our opinion the provisions of the California Code sections are subject to but one interpretation, that is, that every one exercising an authority to sell or buy, save the specifically excluded auctioneer, whether a broker or any other class of agent, must have written authority to enter into a contract required to be made in writing.

Appellant attempted to establish that the buyer was estopped. The evidence offered in support of appellant's burden of proof on this issue was that the buyer said and did nothing about the memorandum prior to the time the appellant bought certain peanuts to resell to the buyer. Since there is no binding contract, the buyer can be estopped to deny its validity only by some prejudice to the

seller caused by some affirmative act on which the seller relied. We uphold the District Court's finding that there was no such action on the part of the buyer.

Affirmed.