### 29694. NATIONS *v.* RUSSELL.

DECIDED NOVEMBER 14, 1942.

*O. C. Hancock,* for plaintiff in error. *A. W. Clapp,* contra.

STEPHENS, P. J. Horace Russell sued James H. Nations and Mrs. Millie Nations Powell to recover $304, which he claimed the defendants were due him as rent under the terms of a certain

lease. The plaintiff alleged that after the execution of the lease on September 23, 1940, Mrs. Powell remarried and that her name is now Mrs. Millie Nations Thompson. Copy of the lease was attached to the petition. Nations answered for himself and denied liability. He set up that he never signed the lease, and that he did not authorize any other person to sign it for him. He alleged that he did not owe the plaintiff the amount sued for or any other sum.

The case proceeded to trial before a judge of the civil court of Fulton County without a jury. It appeared from the evidence that the lease was signed by Mrs. Millie Nations Powell, who was the daughter of James H. Nations, in her own name, and that she also signed the name of James H. Nations to the lease, and that James H. Nations was not present. James H. Nations testified that he did not sign the lease, and did not authorize any one to put his name to it; that he lived in the house about ten or eleven months; that he did not pay the rent; that he went to the renting office when "they were going to throw them out," and stated that "we would try to get up the money some way and that we wasn't ready to move right then;" and that he "would try to help them get up some money;" that before he and his daughter moved into the house the family lived on Williams Mill Road and that he "paid that lease;" that the family moved out of the Williams Mill Road house while he was away at his work as conductor of a work train for the Southern Railroad Company; and that "they rented this house on Virginia avenue and moved into it while I was gone." The defendant then testified that when he returned he moved into the house, and that he, his wife and three daughters lived there; that he learned about his name being signed to the lease about a month or six weeks "before we were moved out;" that he saw the lease; and that his daughter stated that the man at the real-estate place told her to go ahead and sign his name to the lease; and that he did not know his name was signed on the lease until "it had been on there about eight or ten months."

E. E. Stafford testified that he negotiated the lease with Mrs. Powell; that he told her it would be necessary to have James H. Nations, her father, sign it; that she told the witness that the lease was for her father and his family and she had authority to rent the house for him; that she signed her father's name in the

presence of the witness; that he talked with James H. Nations and "went over the entire situation with him, and he told me that he knew he owed the rent and that he would pay it; that he wasn't trying not to pay it, that he knew he owed it and that he had so many obligations because his family expenses were so high, and that he didn't have the money, and that he would pay it and for us not to dispossess him, and we did not dispossess him because of his promise to pay." He further testified that Nations never at any time denied owing the rent on the house, but said that he realized he owed the rent; that Mrs. Powell was the only person present at the time the house was rented and that he took her word for it that she had authority to sign the lease. James H. Nations, recalled, further testified as follows: "I first knew Mr. Stafford when he came out to the house. I told him I realized they owed the house rent, and I would try to help them catch it up as quick as we could. . . We got to talking about the rent and I told him that it was too much rent, but I realized they owed them the rent, and I was not able to pay it right then. My daughter did not have authority to sign my name to the contract. . . I never acknowledged signing this lease or that I was liable for this rent to any one."

The judge rendered judgment against Mrs. Thompson for the amount of rent sued for. The plaintiff moved for a new trial. The judge sustained the motion and ordered the case referred to a jury. Nations excepted to this judgment on the ground that the evidence demanded the judgment originally rendered by the court finding that he was not liable to the plaintiff for the rent.

It is the contention of the plaintiff that the evidence authorized a finding that Nations, after knowledge that his daughter had, without authority, signed his name to the lease sued on, had, by his conduct and statements, ratified the execution thereof. "A ratification by the principal shall relate back to the act ratified, and shall take effect as if originally authorized. A ratification may be express, or implied from the acts or silence of the principal." Code § 4-303. An unauthorized transaction by an agent may be validated by the principal's acquiescence therein for an unreasonable time, after knowledge of such act. "What is a reasonable time is ordinarily a question for the jury." *Glisson* v. *Burkhalter*, 31 *Ga. App.* 365 (4) (120 S. E. 664). While ratification

of an unauthorized act of an agent is not to be presumed, the acts of the principal are to be liberally construed in favor of ratifying the acts of the agent, and the presumption of ratification arises from slight acts of affirmance on the part of the principal or even from mere silence or acquiescence where it appears that the principal received and held the fruits of the agent's alleged unauthorized act. There was evidence before the court which would authorize a finding that Nations ratified the execution of the lease in his name by his daughter. There was evidence that when the rent became in arrears he requested that he and his family not be dispossessed from the rented premises and promised to undertake the payment of the rent. There is no evidence that he repudiated the lease after he became aware that his name had been signed to it.

In the above circumstances the judgment of the trial judge was not demanded as a matter of law, and the uncontradicted evidence did not show that Nations was not liable for the rent under the lease. It follows that the judgment granting a first new trial was a proper exercise of his discretion.

*Judgment affirmed. Sutton and Felton, JJ., concur.*